

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2005

# Scott v. State of NJ

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3446

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Scott v. State of NJ" (2005). *2005 Decisions.* Paper 761.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/761

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3446

LORI SCOTT; DAVID JONES; ALAN DENNIS; ABUBAKR SADIQ;
TYRONE LEAK; WILLIAM WASHINGTON; HERBERT BACON;
PIERCE GRAHAM; JOY HILL; GREGORY SPINNER; HATHA BARAKA;
JOAN BATES; TREVOR TODD; ROBERT NELSON; GERARD SCHENCK;
RUSSELL PETERSON; MICHAEL LANE

v.

STATE OF NEW JERSEY; NEW JERSEY DEPARTMENT OF CORRECTIONS;
JACK TERHUNE; STEVEN PINCHAK, Administrator of East Jersey
State Prison; PATRICK ARVONIO; STEVEN MAGGI, Chief of
Correctional Officers East Jersey State Prison; JOHN DOES 1-20

Tyrone Leak,
Alan Dennis,
        Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 99-cv-01099
District Judge:  The Honorable  William J. Martini

Submitted Under Third Circuit LAR 34.1(a)
July 1, 2005

Before: ROTH, RENDELL, and BARRY, Circuit Judges

(Opinion Filed:   August 1, 2005)

BARRY, <u>Circuit Judge</u>

At all times relevant to this litigation, plaintiffs Tyrone Leak ("Leak") and Alan Dennis ("Dennis") were employed as corrections officers at the East Jersey State Prison ("EJSP"), a facility operated by the New Jersey Department of Corrections ("DOC").[1] Leak and Dennis allege that the State of New Jersey and the DOC, along with various individual defendants, created and maintained a racially hostile work environment, discriminated against black corrections officers, and engaged in a variety of retaliatory acts in direct response to the filing of this lawsuit. They sought redress pursuant to Title VII of the Civil Rights Act of 1964 and New Jersey's Law Against Discrimination ("LAD"), among other federal and state statutes.

Leak and Dennis now appeal from orders of the District Court dated May 24, 2004 and July 26, 2004, which granted summary judgment in favor of defendants and denied plaintiffs' motion for reconsideration, respectively. For the reasons set forth below, both orders will be affirmed.

**I.**

Because we write only for the parties, we will limit our discussion of the facts to

---

[1] The remaining plaintiffs settled their claims and are no longer parties to this litigation.

those which are pertinent to our analysis. Central to the complaint plaintiffs filed in the District Court is the allegation that defendant Steven Maggi, the Chief of Correctional Officers at EJSP ("Chief Maggi"), maintained a racially-inflammatory display on his office wall. This display consisted of a small doll, a straw hat, and a miniature wooden coffin, beneath which was taped a handwritten note reading "NO NIGGERS ALLOWED." Photographs of the display, taken by Leak, are included in the record. Leak and Dennis do not allege that Chief Maggi himself either arranged the items or wrote the note. They do, however, claim that Chief Maggi was aware of the display, and that neither he nor any other supervisor at EJSP took steps to remove it from the wall before this lawsuit was filed.

Defendants admit that the doll, hat, and coffin were located in Chief Maggi's office; indeed, the parties stipulated that all three of the items were gifts presented to Chief Maggi on various occasions by minority corrections officers and inmates. Defendants contend, however, that Leak manufactured the offensive display by rearranging the items and grouping them alongside the note, which according to defendants was itself a fabrication. He then photographed his handiwork.

Plaintiffs' remaining claims arise from events which occurred after they commenced this lawsuit. In the months following the filing of their complaint, both Leak and Dennis filed a series of charges with the Equal Employment Division ("EED"), an

investigative arm of the DOC responsible for combating discriminatory behavior.[2] All of these charges arose from incidents which allegedly occurred at EJSP or involved EJSP officers, and all were investigated by EED. EED found that there was insufficient evidence to support the charges. Thereafter, Leak and Dennis amended their complaint to allege that the incidents themselves, as well as EED's repeated findings that their charges were unsubstantiated, represented a concerted effort to target them in retaliation for filing this lawsuit.

## II.

### A.     Summary Judgment Standard

Our review of a grant of summary judgment is plenary, and we apply the same legal standard as the district court. Saldana v. Kmart Corp., 260 F.3d 228, 231 (3d Cir. 2001). Summary judgment is appropriate when there exists "no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). At this stage of the proceedings, we must view the record in the light most favorable to Leak and Dennis, and draw from the record any reasonable inferences which support their claims. Debiec v. Cabot Corp., 352 F.3d 117, 128 n.3 (3d

---

[2] Plaintiffs filed their complaint on March 11, 1999. Between March 27 and June 1, 1999, Dennis filed seven charges with EED. Between March 26 and September 8, 1999, Leak filed three such charges.

Cir. 2003). Leak and Dennis may not, however, survive summary judgment by relying on the allegations contained in their pleadings; instead, they are required to demonstrate, through affidavits or other reliable evidence, a sufficient factual basis to present a genuine issue for trial. Saldana, 260 F.3d at 232.

## B.    Hostile Work Environment Claim

Leak and Dennis claim that the display in Chief Maggi's office generated an actionable hostile work environment within the meaning of Title VII.[3] While we have no doubt that such a patently offensive display could be actionable under different circumstances, we agree with the District Court that "Leak and Dennis have failed to credibly contest Defendants' overt accusations of fraud," Scott v. New Jersey, No. 99-1099, slip op. at 17 (D.N.J. May 24, 2004), and we will affirm on that basis.

In support of their motion for summary judgment, defendants submitted the deposition testimony of two corrections officers at EJSP, each of whom claims that Leak fabricated, and then photographed, the display. Officer Victor Moore witnessed Leak writing a note which said "niggers not allowed" while inside Chief Maggi's office, and

---

[3] In order for an employer to be liable under a hostile work environment theory, a Title VII plaintiff must prove that: (1) he or she suffered intentional discrimination because of his or her race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same race or sex, in like position; and (5) a basis for respondeat superior liability. See Kunin v. Sears Roebuck Co., 175 F.3d 289, 293 (3d Cir. 1999) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990)).

5

then photographing it alongside the doll, hat, and coffin. Officer Barry Jackson testified that, after arranging the items on Chief Maggi's wall, he saw Leak take a note containing the same racial epithet out of his pocket and add it to the display. Leak later told Jackson that he had photographed the display and that his goal was to generate evidence to support a planned lawsuit:

> I stepped to the door of the chief's office and [Leak] gave me the story. Look, I got an idea for this million dollar lawsuit. I'm sitting there like, what are you talking about. And he takes – the chief had, you know, a couple of things in his office that, you know, various people gave him over the course of the years or whatever. And he arranged a couple of things in this coffin. He had a coffin. He had a braid, a doll and he arranged them in a coffin. I'm saying like, man, what are you doing. And he said, this is racism in here. Because at the time, you know, there was a lot of little things going around, people saying racial stuff and I guess he was just trying to fly with the whole scenario. He took a letter out of his pocket, no Niggers allowed. Then when he did that, he put it up against the wall. He said, I am going to take a picture of this and I am going to show the whole scenario like this and I am going to take it to my lawyer.

A731-32 (Jackson Dep.).[4]

Neither Leak nor Dennis submitted affidavits denying these highly specific, and very serious, allegations. Remarkably, they nevertheless contend that whether or not they fabricated the racist display is an issue of credibility, which should have been left to the jury. We are not persuaded. In the absence of a sworn denial, there is no genuine issue of fact and utterly no basis to even suggest that any reasonable jury would reject the

---

[4] According to Jackson, Leak subsequently induced him to accompany Leak to an attorney's office where Leak and the attorney reviewed the photographs and discussed the potential lawsuit.

testimony of Moore and Jackson and return a verdict for Leak and Dennis on this claim. Accordingly, summary judgment was appropriately granted.

**C.    Retaliation Claims**

To establish a prima facie case of retaliation under either Title VII or LAD, N.J. Stat. Ann. § 10:5-12(d) (2005), a plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) he or she suffered an adverse employment actions; and (3) a causal link exists between the protected activity and the adverse action. Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001); Romano v. Brown & Williamson Tobacco Corp., 665 A.2d 1139, 1142 (N.J. Super. Ct. App. Div. 1995). Conduct by an employer qualifies as an adverse employment action only if it is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges or employment." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997). Oral reprimands and derogatory comments do not qualify as adverse employment actions for purposes of establishing a prima facie case of retaliation. Id. at 1301. Similarly, "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996), cited with approval in Robinson, 120 F.3d at 1301.

We agree with the District Court that neither Leak nor Dennis alleged a cognizable adverse employment action. While it is undisputed that they were transferred

from EJSP to Mountainview Youth Correctional Facility and Northern State Prison, respectively, on May 24, 1999, there is no evidence that these transfers resulted in a reduction in pay or status for either man. Cf. Williams, 85 F.3d at 274 (explaining that a lateral transfer involving "no reduction in pay and no more than a minor change in working conditions" does not qualify as adverse employment action). In fact, the transfer order itself made clear that Leak and Dennis were to "remain on their same shift with the same days off" and left open the possibility that they could return to EJSP once the investigation into their charges was completed. A665. Accordingly, we find as a matter of law that the transfers were not adverse employment actions.[5] Each of the other adverse actions proffered by Leak and Dennis fails for similar reasons. We will, therefore, affirm the grant of summary judgment on the retaliation claims.

## D.    Remaining Claims

For substantially the reasons set forth in the District Court's opinion, we conclude without further discussion that summary judgment was appropriately granted on plaintiffs' remaining claims.

---

[5] Because these transfers were recommended by the EED investigator who handled plaintiffs' series of charges, A664 (observing that Dennis and Leak "deserve reassignment based upon their fears and perceptions" and that "transfer is warranted"), we also find the requisite causal connection to be lacking. That is, even if the transfers were adverse employment actions, as plaintiffs claim, a reasonable jury would be compelled to conclude that they were the legitimate result of the EED investigative process, as opposed to illegitimate retaliation for plaintiffs' filing of this lawsuit.

**III.**

The District Court's order of May 24, 2004 will be affirmed. In addition, because plaintiffs have failed to address the denial of their motion for reconsideration in their submissions to us, the District Court's order of July 26, 2004 will also be affirmed.